UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TANESHA TAYBRON,

     Plaintiff,

                                         Case No. 20-10925

v.

                                         Hon. George Caram Steeh

LIBERTY MUTUAL PERSONAL
INSURANCE COMPANY,

     Defendant.

_____/

OPINION AND ORDER GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT (ECF NO. 18)</u>

Defendant Liberty Mutual Personal Insurance Company seeks summary judgment on its claim that it properly rescinded Plaintiff's insurance policy. For the reasons explained below, Defendant's motion is granted.

<u>BACKGROUND FACTS</u>

Plaintiff Tanesha Taybron seeks to recover benefits under a homeowners' insurance policy issued by Defendant Liberty Mutual Personal Insurance Company ("Liberty Mutual"). Taybron's Saginaw, Michigan, home suffered a fire on November 25, 2019. During its investigation of the fire, Liberty Mutual determined that Taybron

misrepresented facts on her insurance application. As a result, Liberty

Mutual rescinded the policy and declined to provide coverage for the loss.

Taybron bought the home in Saginaw in 2016 and resided there with

her children. She operated a licensed in-home day care on the premises.

She sought homeowner's insurance from Liberty Mutual in May 2019. She

spoke with Stacy Tomaszewski, a Liberty Mutual sales representative, to

obtain a quote. Tomaszewski asked Taybron several questions as part of

the application process, including whether Taybron operated a business or

day care out of her home. Taybron testified that she informed Tomaszewski

that she owned a day care that operated out of her home. Tomaszewski

has denied knowledge of Taybron's day care.

Tomaszewski completed the insurance application electronically and

sent it to Taybron for her electronic signature on June 25, 2019. The

application contained the following questions: "[i]s there any business

conducted at the insured location?" and "[a]re home day care services

regularly provided at the insured location?" In response, the corresponding

boxes were checked "no." ECF No. 18-4 at PageID 300.

Taybron contends that she did not fill out the application herself and

that she only received the signature page, which she signed electronically.

Liberty Mutual asserts that the application was electronically available to

Taybron and that she signed after the following statement:

> Signing this form does not bind the applicant to complete
> the insurance, but it is agreed that this form and the
> answers provided by you to questions asked as part of the
> application process shall be the basis of the contract
> should a policy be issued. In the event that any material
> misrepresentations, omissions, concealment of facts
> and/or incorrect statements are made by or on behalf of
> the insured during the application process, we may
> exercise whatever legal remedies may be available to us
> under the laws and regulations of this state. . . .
>
> ***
>
> By signing below I acknowledge that I have read and
> understand the Applicant Authorization and
> Acknowledgment as well as validated information on pages
> of the application.

ECF No. 18-4 at PageID 301. Based upon her application, Liberty Mutual

issued a homeowner's policy to Taybron, with an effective date of June 22,

2019. The policy provides that "[w]ith respect to loss caused by fire, we do

not provide coverage to the insured who has: (a) Intentionally concealed or

misrepresented any material fact or circumstances; (b) Engaged in

fraudulent conduct; or (c) Made false statements; relating to this

insurance." ECF 18-2 at PageID 274.

Taybron alleges that, after the homeowner's policy went into effect,

she spoke with Tomaszewski approximately once a month in order to make

payments for her auto insurance by phone. During those calls, Tomaszewski allegedly "routinely asked [Taybron] about the day care, such as asking how many kids [she] had at the day care that day, and how the day care was going." ECF No. 22-1 at PageID 575. At least one of these conversations was overheard by Taybron's daughter, Ma'Kayla Smoot. ECF No. 22-5. Tomaszewski denies that these conversations occurred.

Taybron's home was damaged by a fire on November 25, 2019. *See* ECF No. 22-6. She submitted a claim to Liberty Mutual and the company paid for her living expenses while it investigated the claim. During the course of the investigation, a Liberty Mutual investigator interviewed Taybron. When she was asked where she was employed, Taybron told the investigator that she operated a day care out of her home. Liberty Mutual asserts that, had it known about the day care, it would not have issued the policy, as its homeowner's policies are not intended to insure against business risks. At a minimum, Liberty Mutual would have charged a significantly increased premium. Liberty Mutual determined that Taybron misrepresented the existence of the day care in her application. As a result, it rescinded the policy in a letter dated January 14, 2020, and refunded Taybron's premium.

Taybron brought this action, arguing that Liberty Mutual was not entitled to rescind the policy because it knew about the day care when the policy was issued. Liberty Mutual filed a counterclaim, seeking a declaration that it properly rescinded the policy and presenting a claim for unjust enrichment. Liberty Mutual seeks summary judgment in its favor on the issue of rescission.

LAW AND ANALYSIS

I.     Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the

-5-

opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. A "mere scintilla" of evidence is insufficient to meet this burden; the evidence must be such that a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252.

II.   Rescission

Liberty Mutual seeks a declaration that it properly rescinded Taybron's insurance policy. When a party has been fraudulently induced to enter a contract, it may void the contract upon discovering the fraud. *Bazzi v. Sentinel Ins. Co.*, 502 Mich. 390, 408, 919 N.W.2d 20, 29 (2018). Thus, "an insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer," returning the parties to their relative positions as if the policy had never existed. *Id.* "Because a claim to rescind a transaction is equitable in nature, it 'is not strictly a matter of right' but is granted only in 'the sound discretion of the court.'" *Id.* at 409 (citations omitted). For example, rescission should not be granted if the result would be unjust, inequitable, or infeasible, particularly with regard to innocent parties. *Id.* at 410-11.

To establish actionable fraud in the procurement of an insurance policy, Liberty Mutual bears the burden of proving that (1) Taybron made a material representation; (2) it was false; (3) Taybron knew it was false

when she made it, or made it recklessly, without knowledge of its truth; (4)

she made it with the intent that Liberty Mutual act upon it; (5) Liberty Mutual

acted in reliance upon it; and (6) Liberty Mutual was injured. *Webb v.*

*Progressive Marathon Ins. Co.*, __ N.W.2d __, 2021 WL 297455 (Mich.

App. Jan. 28, 2021). In addition, "[r]escission is justified in cases of

innocent misrepresentation if a party relies upon the misstatement,

because otherwise the party responsible for the misstatement would be

unjustly enriched if he were not held accountable for his

misrepresentation." *Id.* at *2 (quoting *Lash v. Allstate Ins. Co.*, 210 Mich.

App. 98, 103, 532 N.W.2d 869 (1995)). "A misrepresentation on an

insurance application is material if, given the correct information, the

insurer would have rejected the risk or charged an increased premium."

*Montgomery v. Fidelity & Guar. Life Ins. Co.*, 269 Mich. App. 126, 129, 713

N.W.2d 801, 804 (2005).

It is undisputed that Taybron's insurance application contained false

information, as it disclaimed the existence of her day care business. The

issue here whether Taybron or Liberty Mutual is accountable for that

misrepresentation. Taybron contends that Liberty Mutual's agent filled out

the application and had actual knowledge of her day care. Taybron alleges

that she signed the application without seeing the pages that preceded her

-7-

signature and assumed that Tomaszewski filled it out correctly. However, by signing the application, Taybron attested that she read and understood it and that the information provided was correct. "It is well established that failure to read an agreement is not a valid defense to enforcement of a contract. A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." *Montgomery*, 269 Mich. App. at 130 (citations omitted).

In *Montgomery*, the defendant insurance company rescinded a life insurance policy because the plaintiff failed to disclose the insured's smoking habit on the application. The plaintiff alleged that "the agent is the one who actually completed the application and that neither she nor the decedent read the application before signing." *Id.* at 129. The Michigan Court of Appeals rejected this argument as "misplaced," explaining that "[w]hether it was plaintiff, the decedent, or the agent who misrepresented the decedent's tobacco use on the application is not material because plaintiff and the decedent signed the authorization, stating that they had read the questions and answers in the application and that the information provided was complete, true, and correctly recorded." *Id.* at 129-30. The court further stated that "[e]ven if the agent did have knowledge of the

-8-

decedent's smoking habit, plaintiff and the decedent had the opportunity to review the application and correct any errors before submitting it." *Id.* at 131; *see also Webb,* 2021 WL 297455, at *2 ("[E]ven if it is true that Progressive completed the application and Clark did not read it, Progressive was still entitled to an order that Clark committed fraud in connection with the application for insurance."); *Howard v. Farm Bureau Ins.*, 2009 WL 4985469, at *2 (Mich. App. Dec. 22, 2009) ("Although plaintiff asserts that he never saw the application and did not know what he was signing, it has long been the law in this state that a party to a contract has a duty to examine the contract and know what the party has signed.").[1]

Taybron argues that Liberty Mutual should be estopped from rescinding the policy, because it knew of her day care at the time the policy was issued, yet it did not rescind the policy until after Taybron suffered a loss. She relies upon *Burton v. Wolverine Mut. Ins. Co.*, 213 Mich. App. 514 (2005). In *Burton*, the insurer discovered a misrepresentation in an auto insurance application and issued a notice of cancellation, indicating that

---

[1] Taybron relies upon *Shah v. General Am. Life Ins. Co.*, 965 F. Supp. 978, 982 (E.D. Mich. 1997) for the proposition that "[w]hen essential facts are disclosed to the insurer's agent, the knowledge of that information will be imputed to the insurance company and the insurance company is estopped from denial of coverage." *Id.* In this regard, *Shah* is not consistent with more recent Michigan case law holding that misrepresentations in insurance applications are attributable to the party signing the application, not the agent.

coverage would cease on November 17, 1986. Prior to the cancellation

date, the insured was in an auto accident. The insurer then rescinded the

policy. The court held that because the insurer elected to cancel the policy

(but provide coverage for a limited time), it was held to that remedy and

was not entitled to rescind. The court reasoned that the insurer induced the

plaintiff to believe that he had coverage until November 17, 1986, despite

the plaintiff's misrepresentation. Only after the plaintiff suffered a loss did

the insurer decide to rescind and return the premium. The court

characterized this remedy as "untenable":

> Defendant wishes, upon the discovery of a
> misrepresentation in the application, to have the right to
> collect a premium and provide coverage as long as there
> are no losses and yet remain entitled to choose rescission
> and deny coverage if a loss occurs. In short, defendant
> wishes to be able to earn a premium without having to
> provide coverage. That, however desirable it may be to
> defendant, is not an available option. Rather, it must either
> rescind the policy upon discovery of the misrepresentation
> and refund the premium or cancel the policy, retaining the
> premium earned until the effective date of the cancellation
> and provide coverage until the effective date of the
> cancellation. But it cannot have its premium and deny
> coverage too.

*Burton*, 213 Mich. App. at 519-20. In other words, the insurer may elect to

cancel the policy or rescind it, not both.

This case is distinguishable from *Burton*, in that Liberty Mutual did not cancel the policy while providing coverage for a specific time period, only to later rescind the policy after a loss occurred during the coverage period. Rather, Liberty Mutual solely elected to rescind the policy upon discovering the misrepresentation, a remedy that the *Burton* court acknowledged was appropriate. *Id.* at 518 ("We would not interfere with defendant's right to rescind the policy ab initio had it chosen to do so upon discovery of the material misrepresentation, regardless of whether that discovery occurred before or after the loss.").

There is no genuine issue of material fact that there was a misrepresentation in the insurance application that was attributable to Taybron, by virtue of her signature. Liberty Mutual has provided evidence that the misrepresentation was material and that it relied upon it in accepting the risk and calculating Taybron's premium. *See* ECF No. 18-3. Taybron does not contest this evidence. Under the circumstances, Liberty Mutual was entitled to rescind the policy *ab initio*. *See Montgomery,* 269 Mich. App. at 129-31; *Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 331, 586 N.W.2d 113 (1998) ("Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by

the insurer."). Because of the misrepresentation in the insurance application, rescission would not be inequitable.[2]

III.    Unjust Enrichment

In a footnote, Liberty Mutual argues that it is entitled to summary judgment on its unjust enrichment claim. An argument set forth exclusively in a footnote is not properly presented for the court's review. *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005) ("An argument contained only in a footnote does not preserve an issue for our review."). Liberty Mutual did not mention its unjust enrichment claim in its statement of issues presented or in the body of its brief. In fairness to Plaintiff and based upon the relatively perfunctory manner of presentation, the court declines to rule upon the issue at this time.

CONCLUSION

IT IS HEREBY ORDERED that Liberty Mutual's motion for summary judgment (ECF No. 18) is GRANTED on the issue of rescission.

Dated: October 21, 2021

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

[2] This case does not involve two innocent parties, and thus the court is not tasked with determining "which blameless party should assume the loss." *Bazzi*, 502 Mich. at 409-12.

-12-