UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TANESHA TAYBRON,

       Plaintiff,

    v.

LIBERTY MUTUAL PERSONAL
INSURANCE COMPANY,

       Defendant.

_____/

Case No. 20-10925

Hon. George Caram Steeh

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT IN PART (ECF NO. 28)

Defendant Liberty Mutual Personal Insurance Company ("Liberty

Mutual") moves for summary judgment on its counterclaim for unjust

enrichment. For the reasons explained below, the court grants Defendant's

motion in part.

STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to

any material fact and . . . the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary

judgment, the court must determine "'whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" *Amway Dist.*

*Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

<u>PROCEDURAL HISTORY</u>

Plaintiff Tanesha Taybron brought this action to recover under a home insurance policy issued by Liberty Mutual. Taybron's Saginaw, Michigan, home suffered a fire on November 25, 2019. During its investigation of the fire, Liberty Mutual determined that Taybron misrepresented facts on her insurance application. As a result, Liberty Mutual rescinded the policy and declined to provide coverage for the loss.

Liberty Mutual filed a counterclaim against Taybron, seeking a declaration that it properly rescinded the policy (Counts I and II) and presenting a claim for unjust enrichment (Count III). The court granted summary judgment in Liberty Mutual's favor on Plaintiff's complaint and Count I of its counterclaim, finding that Liberty Mutual was entitled to rescind the policy because Plaintiff misrepresented material facts on her insurance application.[1] The court did not rule on Liberty Mutual's claim for unjust enrichment, based upon on its relatively perfunctory presentation.

---

[1] The parties stipulated to the dismissal of Defendant's Count II.

The court granted Liberty Mutual leave to file a second motion for summary judgment on its unjust enrichment claim. Under this theory, Liberty Mutual seeks reimbursement of the amount paid to or on behalf of Taybron under the policy while it investigated her claim and prior to rescission. Liberty Mutual paid a total of $21,921.05 for temporary housing and personal property/contents. *See* ECF Nos. 28-2, 28-3, 28-4.

<u>LAW AND ANALYSIS</u>

The court agrees that Liberty Mutual is entitled to reimbursement for benefits paid under the policy, although not for the reason Liberty Mutual advances. Under the equitable doctrine of unjust enrichment, the law implies a contract "when one party receives a benefit from another the retention of which would be inequitable." *Genesee Cty. Drain Comm'r v. Genesee Cty.*, 321 Mich. App. 74, 78 (2017), *aff'd sub nom. Wright v. Genesee Cty.*, 504 Mich. 410 (2019) (citations omitted). "But 'a contract will be implied only if there is no express contract covering the same subject matter.'" *Id.* (citation omitted).

The parties do not dispute the existence of an express contract: the insurance policy issued by Liberty Mutual. When there is no dispute regarding the existence of an express contract covering the subject matter at issue, courts regularly dismiss unjust enrichment claims as a matter of

-3-

law. *See, e.g., Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp.3d 824, 833 (E.D. Mich. 2014) (Michigan law). Accordingly, Liberty Mutual may not recover on an unjust enrichment theory. *Id.* (dismissing insurer's unjust enrichment counterclaim against insured because an express contract between the parties was undisputed).

This does not end the inquiry, however, as the relief Liberty Mutual seeks – restitution – is inherent in the equitable remedy of rescission.[2] "Rescission is the common, shorthand name for a composite remedy (more fully, 'rescission and restitution') that combines the avoidance of a transaction and the mutual restoration of performance thereunder." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 54 cmt. a (2011).[3]

As this court has already held, Liberty Mutual was entitled to rescind the insurance policy based upon Taybron's material misrepresentation in

---

[2] In this manner, the concepts of unjust enrichment and rescission overlap and are guided by the same principles. *See Wright v. Genesee Cty.*, 504 Mich. 410, 417-18 (2019) (citation omitted). "The remedy for unjust enrichment is restitution." *Id.*

[3] Michigan courts are guided by the RESTATEMENT OF RESTITUTION. *See Wright*, 504 Mich. at 418; *Roseville Plaza Ltd. P'ship v. U.S. Gypsum Co.*, 811 F.Supp. 1200, 1211 (E.D. Mich. 1992), *aff'd*, 31 F.3d 397 (6th Cir.1994) (noting the Michigan Supreme Court's pattern of reliance on the Restatement of Restitution in fashioning its common law").

her application. ECF No. 24. *See Bazzi v. Sentinel Ins. Co.*, 502 Mich. 390, 408 (2018) ("[A]n insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer."). "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Id.* at 409. In other words, "to rescind a contract is not merely to terminate it, but to undo it from the beginning, and the effect of rescission is not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission involves a restoration of the status quo." *Id.* at 410 n.10.

In this case, the status quo has been partially restored, in that Liberty Mutual returned the premium paid by Taybron for the policy. *See Northland Radiology, Inc. v. USAA Cas. Ins. Co.*, 2020 WL 3394549, at *5-6 (Mich. App. June 18, 2020), *app. denied*, 507 Mich. 900 (2021) ("Unlike cancellation of a policy, which permits the insurer to keep that portion of the premiums corresponding to the period of coverage preceding cancellation, rescission requires a full refund of the premiums paid.") (citing *Burton v. Wolverine Mut. Ins. Co.*, 213 Mich. App. 514, 520 (1995)). In order to restore the status quo, as if the contract had never been made, so too must

Taybron return the amounts paid to her or on her behalf under the policy. *See id.* ("[An insurer entitled to rescind a[n] . . . insurance policy because of fraud is not obligated to pay benefits under that policy."). Requiring Liberty Mutual to return the premium without considering the benefits already paid restores Taybron to her precontract position, but not Liberty Mutual. *See id.* (insurer may rescind by setting off premium against benefits already paid).

Taybron argues that recovery for Liberty Mutual is precluded by the voluntary payment doctrine: "where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying." *Progressive Michigan Ins. Co. v. United Wisconsin Life Ins. Co.*, 84 F. Supp.2d 848, 854 (E.D. Mich. 2000) (citation omitted). Taybron contends that Liberty Mutual knew the facts underlying its decision to rescind (the existence of her daycare) before it voluntarily paid her benefits under the policy.

However, "[w]hen an insurer pays expenses on behalf of its insured pursuant to an insurance contract, it is not doing so as a volunteer." *Esurance Prop. & Cas. Ins. Co. v. Michigan Assigned Claims Plan*, 507 Mich. 498, 511 (2021). An insurer who has an "arguable duty to pay" under a policy is "protecting its own interests and not acting as a volunteer." *Id.*

-6-

Assuming that Liberty Mutual knew the basis for rescission early in its investigation of the claim, it nonetheless had a strong incentive for paying Taybron's claim promptly and sorting out its liability later. Under Michigan law, if first-party insurance claims are not paid on a timely basis, "the claimant is entitled to 12 percent interest, irrespective of whether the claim is reasonably in dispute." *Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 276 Mich. App. 551, 566 (2007); M.C.L. § 500.2006(4). In this context, it cannot be said that Liberty Mutual paid Taybron's claim as a "volunteer." *See Esurance*, 507 Mich. at 518 (insurer not a volunteer under the no-fault act, when penalty interest and attorney fee "statutes strongly incentivize insurers like Esurance to adhere to the no-fault act's 'pay promptly, litigate later' logic").

Taybron next argues that she should not have to make Liberty Mutual whole because she relied to her detriment on the benefits provided. Reliance, or a change in position, is a defense to restitution. "As a general rule, a payment made under a mistake of fact which induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered, *provided the payment has not caused such a change in the position of the payee that it would be unjust to require the refund*." *Wilson v. Newman*, 463 Mich. 435,

-7-

441 (2000) (emphasis added; citation omitted); *see also Michigan Educ. Emps. Mut. Ins. Co. v. Morris*, 460 Mich. 180, 198-99 (1999) ("If the recipient of such a benefit has relied to his detriment on it, the plaintiff would be estopped from demanding reimbursement."). This "change of position" defense to restitution is generally available when a claimant provides a benefit by mistake. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 65 cmt. a (2011). However, "[i]f the defendant rather than the claimant is primarily responsible for the defendant's unjust enrichment, the defendant may not assert the defense of change of position." *Id.* at § 52. "The defense of change of position is available only to a recipient without notice (§ 69), and only to the extent that an obligation to make restitution would be inequitable to the recipient. The defense is therefore unavailable to a conscious wrongdoer (§ 51(3)) or to a recipient who is primarily responsible for his own unjust enrichment (§ 52(3))." *Id.* at § 65 cmt. a.

Here, Taybron obtained benefits as a result of a misrepresentation in her insurance application. In this regard, she is primarily responsible for her own unjust enrichment, the "change of position" defense is not available to her, and it would not be inequitable for her to make restitution.

Taybron also argues that the amount of restitution should be measured by the actual value she received, rather than the amount paid by Liberty Mutual. For example, Taybron suggests that the rent was inflated and that various fees charged to Liberty Mutual, such as the security deposit, did not directly benefit her. It is true that the general measure of damages for an unjust enrichment claim is the "value of the benefit received by the defendant, not the actual damage which has been suffered by the plaintiff." *Allor v. Declark, Inc.*, 2012 WL 555779, at *2 (Mich. App. Feb. 21, 2012) (citing *B & M Die Co. v. Ford Motor Co.*, 167 Mich. App. 176 (1988)). However, the measure of unjust enrichment or restitution may be calculated in different ways, depending on the circumstances. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 49 (2011).

In this case, Taybron received a direct money payment and Liberty Mutual paid housing costs on her behalf. "Enrichment from a money payment is measured by the amount of the payment or the resulting increase in the defendant's net assets, whichever is less." *Id.* at § 49(2). "Enrichment from the receipt of nonreturnable benefits" may be measured in various ways, including the value to the defendant, the market value, or "the cost to the claimant of conferring the benefit." *Id.* at § 49(3).

-9-

In light of the circumstances, which involve rescission and a return to the status quo, the cost to Liberty Mutual of conferring the benefits is the appropriate measure of value. Restoring the parties to the status quo, as if no contract had been made, must involve restitution of the amount Liberty Mutual paid under the policy, rather than calculation of the subjective benefit experienced by Taybron. Further, "[t]he value for restitution purposes of benefits obtained by the misconduct of the defendant, culpable or otherwise, is not less than their market value." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51 (2011). In other words, "[e]nrichment from benefits wrongfully obtained is not discounted to reflect some lesser value actually realized in advancing the purposes of the defendant." *Id.* at cmt. d.

Liberty Mutual paid $21,921.05 to or on behalf Taybron under a policy that was properly rescinded. Restitution in that amount to Liberty Mutual returns the parties to the status quo and avoids the retention of a benefit that was wrongfully obtained.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Liberty Mutual's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Liberty's Mutual's counterclaim for unjust enrichment (Count III) is

DISMISSED. The court will enter judgment in Liberty Mutual's favor on its

counterclaim for rescission (Count I) in the amount of $21,921.05.

Dated:  May 19, 2022

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 19, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk